DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
    v.                      )   Cr. No. 03-10368-RCL
                            )
DEREK FRAZIER               )

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT II OR, ALTERNATIVELY, TO REQUIRE PROSECUTION TO ELECT TO DISMISS ONE COUNT BASED UPON PRINCIPLES OF MULTIPLICITIOUSNESS**

Now Comes defendant, Derek Frazier, who hereby files this memorandum in support of his Motion to Dismiss Count II or, Alternatively, to Require Prosecution to Elect to Dismiss One Count Based Upon Principles of Multiplicitousness.

**DISCUSSION**

The Fifth Amendment provides in part that "[n]o person shall ... be subject for the same offense to be twice put in jeopardy of life or limb."  Benton v. Maryland, 395 U.S. 784 (1969) "It is designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that

1

even though innocent he may be found guilty." Green v. United States, 355 U.S. 184, 187-88 (1957) See also United States v. Rivera-Martinez, 931 F.2d 148, 152 (1st Cir. 1990)

In North Carolina v. Pierce, 395 U.S. 711 (1969), the Supreme Court interpreted the Fifth Amendment to protect against a second prosecution for the same offense after acquittal. It also protects against a second prosecution for the same offense after conviction. And, finally and more applicable to the present situation, it protects against multiple punishments for the same offense. Id at 717. "In sum, the double jeopardy clause prohibits both successive prosecutions and multiple punishments for the 'same offense' " Thomas, Rico Prosecutions and the Double Jeopardy/Multiple Punishment Problem, 78 Nw.U.L.Rev. 1359, 1360 (1984)

"Multiplicity is the charging of a single offense in several counts or in several charging instruments. The danger of a multiplicitous indictment is that it may violate double jeopardy by resulting in multiple sentences or punishments for a single offense, see United States v. Hearod, 499 F.2d 1003, 1005 (5th Cir. 1974) or that it may prejudice the defendants by causing the jury to convict on a given count solely on the strength of evidence on the counts remaining. Id." Wieland v. Brown, 917 F.2d 1305 (6th Cir. 1990); see United States v. Street, 66 F.3d 969, 974 (8th Cir. 1995)("the vice of multiplicity is that it may

lead to multiple sentences for the same offence")  Such an indictment may be cured through election or dismissal of counts. See e.g., United States v. Feldhacker, 849 F.2d 293, 298 (8th Cir. 1988), cert. denied. sub nom. Sink v. United States, 488 U.S. 1012 (1989)(election of counts curing multiplicitous indictment); United States v. Rigas, 281 F.Supp 2d 660 (SDNY 2003); United States v. MacPherson, 959 F.2d 230 (1st Cir. 1992)(proper remedy was for court to dismiss multiplicitous count); United States v. Seda, 978 F.2d 779 (2nd Cir. 1992)(cannot charge defendant with violation of 18 U.S.C. 1344 and 1014 based upon the same underlying conduct)

"The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." United States v. Reedy, 304 F.3d 358, 363 (5th Cir. 2002)  When overlapping statutory provisions create the risk of multiplicity, "'the test for determining whether the same act or transaction constitutes two offenses or only one is whether conviction under each statutory provision requires proof of an additional fact which the other does not." Id.  This test is derived from the Supreme Court's landmark decision in Blockburger v. United States, 284 U.S. 299, 304 (1932)

In determining whether the Blockburger test is satisfied the Court must first analyze the language of the statute's

provisions.  See <u>United States v. Bastion</u>, 112 F.Supp. 378, 381 (SDNY 2000)  If the two offenses charged are set forth in separate statutes, or in different sections of one statute, or in different parts of a section, and each clearly authorizes a punishment for the violation of that provision, the court may ordinarily infer that Congress intended to authorize punishment under each provision.  This inference is, however, rebutted if the "Blockburger same-elements" test is not satisfied.  This test requires proof of a fact that the other does not, is employed to ascertain whether the inference that Congress intended multiple punishments is reasonable.  See <u>Blockberger v. United States</u>, 284 U.S. 299 (1932).  If the Blockburger test is satisfied, the court may presume that multiple punishments are authorized.

This presumption clearly may, however, be overridden by Congress's intent. Therefore, it is important to review a statute's structure and language before concluding that a defendant may be punished multiple times simply because numerous subsections of a statute are seemingly triggered by the conduct of a defendant. See <u>United States v. Munoz-Romo</u>, 989 F.2d 757, 758 (5th Cir. 1993)

In the instant case, the government has charged the defendant with 2 separate violations of subsection 18 U.S.C. 922(g).  Count One charges him with being a felon in possession of a fire arm in violation of 922 (g)(1). See Count I attached as

Exhibit A. Count II charges Mr. Frazier with being a domestic violence misdemeanant in possession of a firearm in violation of 922(g)(9). See Count II attached as Exhibit B. The same firearm possession by Mr. Frazier forms the factual basis for both Counts. See Police report attached as Exhibit C.

While on first blush a court may conclude that 922(g)(1) and 922(g)(9) require different elements of proof to convict a defendant, the reality is that the material focus of this subsection was to enlarge the class of people subject to prosecution for being in possession of a firearm. The fact that Mr. Frazier falls into two categories or classes of people subject to prosecution does not convert into a presumption that Congress intended that he be prosecuted and punished twice for the underlying conduct; i.e., possession of a firearm.

In fact, the majority of Courts that have ruled on this multiplicitousness issue in the context of Section 922(g) violations found that, regardless of what result is dictated by the Blockburger test, the "statute's structure and legislative history...plainly expressed a contrary view on the part of Congress" to prohibit multiple punishments simply because a person, who committed one firearm offense, falls into various categories that trigger Section 922(g). United States v. Munoz-Romo, 989 F.2d 757, 758 (5th Cir. 1993); see also United States v. Shea, 211 F.3d 658, 673 (1st Cir 2000)[government concedes

fact that Shea could not be convicted for multiple counts of 922(g) and First Circuit agrees] <u>United States v. Dunford</u>, 148 F3d 385 (4th Cir. 1998); <u>United States v. Johnson</u>, 130 F3d 1420, 1425 (10th Cir 1997); <u>United States v. Winchester</u>, 916 F.2d 601 (11th Cir. 1990); <u>United States v. Bastian</u>, 112 F.Supp. 382, 378 (SDNY 2000), <u>United States v. Vest</u>, 913 F.Supp 1345, 1352 (W.D. Mo 1995); and <u>United States v. Bicaksiz</u>, 194 F.3d 390 (2nd Cir 1999) compare <u>United States v. Peterson</u>, 867 F.2d 1110 (8th Cir. 1989) "[T]hat in enacting section 922(g), it was not Congress' comprehension or intention that a person could be sentenced, for a single incident, under more than one of the subdivisions of Section 922(g)." <u>Winchester</u> 916 F.2d at 606.

In <u>United States v. Bastian</u>, the District Court poignantly discussed why its improper to charge the same person with two separate subsections of 922(g). Specifically:

> 922(g) makes it unlawful for a person who fits within the definition of any one of nine specified classes to possess a firearm or ammunition. Thus, the statute prohibits firearm possession by, for example, convicted felons, fugitives, unlawful users of drugs, adjudicated "mental defectives," and illegal aliens. While the prohibited conduct is the possession of any firearm or ammunition, the statute applies only to members of classes

6

specified in the statute. The nine classes of people barred from firearm possession by Section 922(g) are comprised of persons who, by reason of their status, Congress considers too dangerous to possess guns. To establish the crime, both elements are prerequisites, but it is the conduct--firearm possession--that Congress targeted. If multiple prosecutions were permitted under various subparts of Section 922(g) for the possession of a single firearm on one occasion, it would effectively criminalize membership in the class itself. Nothing in the statute, however, suggests that Congress sought to punish persons by reason of their legal status alone.

As the case law and the First Circuit[1] support a conclusion that the defendant cannot be convicted of and sentenced to multiple counts of Section 922(g) arising out of the same factual event, this Court must decide whether the Count should be dismissed pre-trial. This decision is discretionary and rooted in whether the Court feels the defendant will be subjected to sufficient prejudice at trial warranting dismissal in advance.

---

[1] Given that the U.S. Attorney's Office conceded that multiple convictions for 922(g) are prohibited if they arise out of the same facts, this should constitute issue preclusion for the prosecutor in this case.

The alternative is for the government to elect which count it would prefer to proceed on and then dismiss the other count.

Since the two predicate convictions are felonies (assault and battery, domestic assault and battery), the government could easily go forward on Count One [922(g)(1)] using either conviction (assuming they were presented to the grand jury). The use of multiple 922(g) counts is, however, both unnecessary and problematic as it has the potential of creating an image in the jury's mind that Mr. Frazier has a propensity for committing crimes. If both counts are submitted to the jury, they will not only see that Mr. Frazier has committed multiple crimes but they will receive instructions on both counts about how to view the underlying criminal predicates. This will only serve to further reinforce the image that Mr. Frazier is a career criminal and undermine his right to due process and a fair trial.

If, alternatively, Mr. Frazier is only subject to prosecution for one count, the potential for prejudice will be significantly reduced. The advantage of requiring the government to elect under these facts is that, while the prejudice to Mr. Frazier is reduced, it will not limit the government's ability to win a conviction if it can prove that Mr. Frazier possessed the firearm/ammunition in question. In fact, the government will not lose its ability to seek up to a ten year sentence for Mr. Frazier, which is the maximum allowed under each count,

regardless of which count it elects.

The government will, however, lose the implicit threat to Mr. Frazier that he might to subject to multiple or consecutive sentences if they proceed on both counts. This psychological threat is not only unfair and unsupported by the case law, it constitutes the type of punishment and anxiety that the Double Jeopardy Clause and the Fifth Amendment sought to preclude.

Respectfully submitted,
BY HIS ATTORNEY,

_____
JAMES H. BUDREAU, BAR#553391
20 Park Plaza, Suite 905
Boston, MA 02116
(617) 227-3700

I, James Budreau, do hereby certify that I served a true copy of this document upon AUSA Seth Berman by hand on this 15th day of April, 2004.

_____
JAMES H. BUDREAU

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. 03CR10368RCL |
| ) | VIOLATIONS: |
| ) | 18 U.S.C. §922(g)(1) |
| ) | Previously Convicted Felon in |
| V. ) | Possession of Firearm and |
| ) | Ammunition |
| ) |  |
| DEREK FRAZIER ) | 18 U.S.C. §922(g)(9) |
| ) | Domestic Violence Misdemeanant in |
| ) | Possession of Firearm and |
| ) | Ammunition |

INDICTMENT

**COUNT ONE**:   (18 U.S.C. §922(g)(1) - Previously Convicted Felon in Possession of Firearm and Ammunition)

The Grand Jury charges that:

On or about October 3, 2003, at Randolph, in the District of Massachusetts,

**DEREK FRAZIER**,

defendant herein, did, having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly possess in and affecting commerce a firearm, to wit: a .40 caliber Glock semi-automatic pistol, with an obliterated serial number, and 5 rounds of .40 caliber ammunition.

All in violation of Title 18, United States Code, Section 922(g)(1).

A

<u>COUNT TWO</u>:     (18 U.S.C. §922(g)(9) – Domestic Violence Misdemeanant in Possession of Firearm and Ammunition)

The Grand Jury further charges that:

On or about October 3, 2003, at Randolph, in the District of Massachusetts,

**DEREK FRAZIER,**

defendant herein, did, having been convicted in a court of a misdemeanor crime of domestic violence, knowingly possess in or affecting commerce a firearm, to wit: a .40 caliber Glock semi-automatic pistol, with an obliterated serial number, and 5 rounds of .40 caliber ammunition.

All in violation of Title 18, United States Code, Section 922(g)(9).



COMMONWEALTH OF MASSACHUSETTS

NORFOLK, S.S.

DISTRICT COURT
QUINCY DIVISION

AFFIDAVIT
IN SUPPORT OF SEARCH WARRANT APPLICATION

I, Paul Smyth, being duly sworn depose and say:

1. I am a Randolph Police Officer and have been so employed since 1990. I am currently serving in the rank of detective. In my current assignment it is my duty to conduct criminal investigations of complaints received within my scheduled tours of duty. I have been assigned to the detective division since January 1996. I was trained by the Massachusetts Criminal Justice Training Council under the direction of the Massachusetts State Police at the Needham Police Academy. Since completing my training I have attended several specialized courses in various aspects of criminal investigation. Part of my responsibility as a detective for the Randolph Police Department is narcotic investigations. I am also a member of the South Shore Drug Task Force, which involves assisting area towns with narcotic investigations. I have also been involved in narcotic investigations since April of 1997. I have participated in and completed various specialized training courses including over 210 hours of Narcotic and Dangerous Drug investigation courses. These courses were conducted and sponsored by, but not limited to the Massachusetts Criminal Justice Training Council, The Massachusetts State Police and the United States Drug Enforcement Administration.

2. Throughout my career as a Randolph Police Officer I have conducted or participated in the arrest of over two hundred drug offenders. The investigations which led to these arrests utilized such investigative techniques as control purchases of drugs by confidential informants, undercover purchases of drugs by other police officers, executions of search warrants and so-called buy busts. During this training and experience I have observed numerous types of controlled substances and I am familiar with the paraphernalia associated with these substances and the ways in which they are commonly packaged. I am also familiar with the prices charged for controlled substances and with the jargon associated with their use.

3. In addition to investigating violations of the Massachusetts Controlled Substance Laws my responsibilities include but, not limited to the following. Further

1



...stigations and prosecution of all felonies, thefts, frauds, burglaries, check cases, aggravated assaults and other such misdemeanors that require further investigation. Identification duties are also included which consist of fingerprinting, photography and preparing necessary files for prisoners.

4. On November 3, 2003 at approximately 7:54am the Randolph Police received a 911 call from 20 Nelson Drive apartment #3A. On this 911 open line Officer Handy heard the sounds of a man yelling at a woman and hitting her. Officer Solow, Officer Fisher and Officer Pantazelos all responded to 20 Nelson Drive apartment #3A. Officers knocked for several minutes until the door was opened by Derek Frazier. Derek Frazier and his mother Hattie Frazier both reside at 20 Nelson Drive Apartment #3A. Once inside the apartment they identified the only other occupant as being Ebony Abel. Officers interviewed both parties and determined that there was probable cause to arrest for assault and battery (domestic violence). Derek Frazier was placed under arrest and transported to the Randolph Police Station. I along with Chief Churchill responded to 20 Nelson Drive apartment #3A and took photographs of Ebony Abel's injuries. Ebony Abel advised Officer Pantazelos that at no time did Derik Frazer leave the apartment during the domestic altercation or before the arrival of the police.

5. After clearing from the apartment Officer Fisher asked me to return because of new information. Upon my return Officer Fisher advised me that Ebony Abel stated to him that while the domestic altercation was going on Derek Frazier went into the bedroom and retrieved a black handgun from a couch in this bedroom. He pointed the gun at her and demanded that she take her clothes off. He demanded several times but she refused each time. After this occurred he went into the living room area and that was the last time she saw this gun. Ebony described the gun as being a black handgun with a "slide" on the top.

6. According to the Randolph Police Department Firearms records Derek Frazier does not have or ever did have a license to carry a firearm or an FID card issued to him. The files also show that Hattie Frazier does not have a license to carry a firearm or an FID card issued to her. The Commonwealth of Massachusetts Criminal History Systems Board shows that Derek Frazier was convicted on May 6, 1992 for three counts of Possession of a Firearm without a license. He was found guilty and sentenced to 2 ½ years in the House of Correction.

7. According to the files at the Randolph Police Department, Massachusetts Registry of Motor Vehicles and the Massachusetts Criminal History Systems Board Derek Frazier resides at 20 Nelson Drive apartment #3A In Randolph Massachusetts.

8. Based on the aforementioned facts probable cause exists that a firearm as defined in Massachusetts General Laws Chapter 140 section 121 is illegally possessed by Derek

2

Frazier DOB of 5-29-72 at his residence at 20 Nelson Drive apartment #3A in Randolph Massachusetts. Therefore I respectfully request that a search warrant be issued at Derek Frazier's residence located at 20 Nelson Drive apartment#3A in Randolph, a dwelling house more detailed described in the attached application.

Signed under the pains and penalties of perjury this 3rd day of November 2003.

                                            Paul Smyth
                                            Detective
                                            Randolph police Department

The above named affiant appeared before me and swore the above to be true this 3rd day of November, 2003.

                                            _____

                                            _____

                                            _____